[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DEC 20, 2010
JOHN LEY
CLERK

_____

No. 09-14788
Non-Argument Calendar

_____

Agency No. A097-641-693

JOSE RAUL JARAMILLO-MESA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(December 20, 2010)

Before EDMONDSON, PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner Jose Raul Jaramillo-Mesa, a native and citizen of Colombia proceeding pro se, petitions for review of the order by the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's ("IJ") denial of withholding of removal and relief under the United Nations Convention Against Torture ("CAT").[1] No reversible error has been shown; we deny the petition.

We review the BIA's decision in this case and the IJ's decision to the extent that the BIA relied upon the IJ's reasoning. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001) (noting that we review the BIA's decision; but "[i]nsofar as the [BIA] adopts the IJ's reasoning, we will review the IJ's decision as well"). We review legal determinations de novo. Id. Factual determinations are reviewed under the "highly deferential" substantial evidence test; and we must "affirm the . . . decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (citation omitted). To reverse a fact determination, we must conclude "that the record not only supports reversal, but compels it." Mendoza v. U.S. Attorney Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

---

[1]The BIA and IJ determined that Petitioner's asylum application was time-barred. Petitioner does not raise asylum as an issue on appeal.

An alien seeking withholding of removal must show that his life or freedom would be threatened upon return to his country because of a protected ground, including membership in a particular social group. Id.; see also 8 U.S.C. § 1231(b)(3)(A). The alien bears the burden of demonstrating that he more-likely-than-not would be persecuted or tortured upon return to his country of nationality by showing past persecution on account of a protected ground or demonstrating a future threat to his life or freedom on a protected ground. Id.; see also 8 C.F.R. § 208.16(b)(2).

Petitioner sought relief based on his conservative political beliefs and his status as an HIV-positive homosexual. When he was in college, Petitioner and three of his friends started a "socio-political" organization that aligned itself with the Conservative Party ("CP"). This organization chiefly sought to raise awareness of and advocate for the respect and recognition of the gay community. The group also participated in CP activities during elections. As the group became more involved with its social and political advocacy, Petitioner began receiving threats from the Revolutionary Armed Forces of Colombia ("FARC"). The threats increased and he decided to move to his mother's house, which was outside of the city.

While at his mother's house, Petitioner was kidnaped by the FARC and held captive for 13 days. About 10 days into his captivity, two FARC members sodomized him with an object and told him that they wanted him to stop his advocacy and renounce his rights as a homosexual. Later, after he escaped from the FARC, he received medical care at a clinic to correct an anal fissure. Shortly after his escape, Petitioner fled to the United States.

The IJ determined that significant inconsistencies existed between Petitioner's testimony and his documentary evidence: (1) he failed to mention his HIV-positive status in his asylum application and (2) he failed to document the medical treatment he allegedly received after FARC members sodomized him. Because these inconsistencies were not explained adequately with corroborating evidence, the IJ concluded that Petitioner was not credible and denied relief. The BIA agreed with the IJ's adverse credibility determination and the bases for it on Petitioner's claim that the FARC targeted him because of his HIV-positive status and homosexuality. In addition, the BIA concluded that Petitioner did not show past persecution because of his political opinion.

On appeal, Petitioner argues that the IJ and BIA did not consider whether he was persecuted because of his political opinion. But the BIA concluded explicitly that Petitioner did not suffer past persecution on account of his involvement with

4

the CP; and substantial evidence supports the BIA's conclusion. In his asylum application, Petitioner focused chiefly on his social, instead of political, advocacy. And his testimony about his involvement in the CP was limited. While he testified that his socio-political organization was part of the CP, he provided no information to corroborate this claim and he, himself, occupied no significant post in the CP. He did not link the threats or mistreatment he received from the FARC to his political ideology and, instead, linked it to his advocacy for gay rights. See Rivera v. U.S. Attorney Gen., 487 F.3d 815, 821-22 (11th Cir. 2007) (rejecting petitioner's claim of mixed motive persecution where the FARC never demanded that petitioner stop his political activities and where petitioner occupied no post in the party).

Petitioner also challenges the IJ's adverse credibility determination. Like any fact finding, a credibility determination may not be overturned unless the record compels it. Forgue, 401 F.3d at 1287. An adverse credibility determination alone may be sufficient to support the denial of relief. Id. But "an adverse credibility determination does not alleviate the IJ's duty to consider other evidence produced by an asylum applicant." Id.

Petitioner failed to mention that he was HIV-positive in his asylum application; and this fact featured centrally in his overall claim that he came to the

5

FARC's attention because he was an HIV-positive homosexual. The failure to include such a relevant fact in his asylum application or to explain adequately its omission casts serious doubt on Petitioner's credibility and the IJ correctly noted the need for corroborating evidence to support this claim. See Yang v. U.S. Attorney Gen., 418 F.3d 1198, 1201 (11th Cir. 2005) (the weaker the applicant's testimony, the greater the need for corroborative evidence). And Petitioner failed to obtain corroborating documents about his HIV diagnosis in Colombia, even after the IJ allowed him the opportunity to obtain such documents.

Petitioner did submit an affidavit from a psychoanalyst, wherein the psychoanalyst asserted that he had advised the Petitioner to obtain an HIV test between 1991 and 1992 and that Petitioner informed him that the test results were positive. Petitioner argues that the psychoanalyst's affidavit corroborates his claim that he was HIV-positive while in Colombia, but the IJ and BIA did not consider this evidence.

That neither the IJ nor the BIA mentioned specifically the affidavit does not mandate a remand here. We typically do not require the IJ or BIA to discuss explicitly every piece of evidence a petitioner has submitted. Tan v. U.S. Attorney Gen., 446 F.3d 1369, 1374-76 (11th Cir. 2006). And the IJ noted that it had considered all of Petitioner's submitted evidence. The affidavit also did not tend to

6

corroborate Petitioner's claim that he was diagnosed as HIV-positive while in Colombia: the affidavit was not based on firsthand knowledge and evidenced no medical diagnosis of HIV or any medical treatment of the disease.

Thus, we conclude that substantial evidence supports the IJ's conclusion that Petitioner was not credible based on the omission from his asylum application of his HIV-positive condition and that Petitioner failed to corroborate sufficiently this claim. See Forgue, 401 F.3d at 1287 (an applicant's failure to mention relevant facts before the asylum hearing, such as the omission of those facts from the asylum application, may support an adverse credibility determination).

The IJ also based the credibility determination on Petitioner's failure to corroborate sufficiently his claim that he received medical treatment after the FARC sodomized him. To corroborate this claim, Petitioner submitted a letter from the hospital where he allegedly received treatment that stated it had no records of Petitioner receiving treatment on the specified date. The IJ and BIA reasonably inferred from the absence of treatment records that Petitioner did not receive the claimed treatment.[2] Thus, the letter contradicted Petitioner's claim that

---

[2]While this document could be interpreted as nothing other than the absence of a treatment record and not evidence that Petitioner did not receive emergency medical treatment, the IJ and BIA did not interpret the letter this way. And we "cannot look at the evidence presented to the BIA to determine if interpretations of the evidence other than that made by the BIA are possible," but must affirm the BIA's decision "unless there is no reasonable basis for that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1029 (11th Cir. 2004).

he required emergency medical treatment after he was kidnaped and sodomized and this discrepancy was unresolved by Petitioner's submissions. And Petitioner's need for emergency medical treatment relates directly to his claim that he was persecuted by the FARC because of his HIV-positive status.[3] We conclude that substantial evidence supports this basis for the IJ's adverse credibility determination.

The IJ and BIA provided specific and cogent reasons for the credibility determination, which is supported by substantial evidence. See D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 819 (11th Cir. 2004). Nothing in the record compels us to substitute our judgment on the issue. Because we see no error in the adverse credibility determination, we decline to address the IJ's and BIA's alternative reasoning for denying relief.[4]

PETITION DENIED.

---

[3]Petitioner testified that the FARC sodomized him with an object instead of their bodies because they knew he was HIV-positive.

[4]We also reject Petitioner's challenge to the denial of CAT relief. To obtain CAT relief, the alien must demonstrate that torture would be inflicted by the government or with the government's acquiescence. Reyes-Sanchez v. U.S. Attorney Gen., 369 F.3d 1239, 1242 (11th Cir. 2004). The record indicated that members of the gay community actively employed the legislative and judicial systems to assert their rights and that some police were committed to investigating and prosecuting human rights violations within the gay community. On this record, we cannot say the record compels the conclusion that Petitioner would be tortured with the acquiescence of the government.